OPINION *Page 2 
{¶ 1} Appellant-father Michael B. appeals the November 29, 2007, judgment entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights with respect to his son, Dylan B., and his daughter Luna B. and granted permanent custody of the child to appellee, the Stark County Department of Job and Family Services (hereinafter "SCDJFS").
 I. Procedural History {¶ 2} Appellant is the natural father of Dylan B., whose date of birth is May 24, 2004 and Luna B. whose date of birth is September 12, 2005. Alyssa B. is the children's natural mother.
 {¶ 3} In May of 2006, the SCDJFS became involved with the family on an informal basis. On August 21, 2006, SCDJFS filed a complaint alleging that Dylan and Luna were dependent and neglected children. The initial concern that led to the filing of the complaint was the condition of the children's home. Specifically animal feces on the flooring, an overwhelming odor of animal urine, cluttered rooms, unsanitary kitchen conditions including dirty dishes, overflowing litter box, flies and an inoperable toilet. The children were found to be extremely dirty and uncared for. The agency also intervened due to inappropriate discipline by the father. The complaint was filed after the parents failed to comply with voluntary services that were offered them.
 {¶ 4} On November 7, 2006, the children were found to be dependent and temporary custody was given to the SCDJFS. Appellant-father's case plan included the following requirements: 1). complete a parenting evaluation and follow its recommendations; 2). complete the parenting skills classes with Goodwill Industries; 3). *Page 3 
submit to a substance abuse assessment at Quest Recovery Services, submit random urine screens and follow all recommendations issued as a result of the assessment; and 4). engage in individual counseling.
 {¶ 5} On July 9, 2007, SCDJFS filed a motion for permanent custody of the children. On July 23, 2007, the paternal uncle, Joshua B., filed a motion seeking legal custody of the children.
 {¶ 6} On November 6, 2007, a permanent custody and Motion for Change of Legal Custody evidentiary hearings were conducted. The following evidence was presented during the hearings.
 {¶ 7} Appellant-father did complete his parenting evaluation. That evaluation recommended parenting education and long term individual therapy. He began counseling with his wife at Community Services, Inc. Following initial joint sessions, the counselor recommended that the parents receive individual counseling due to "couples' issues." Accordingly, appellant was referred to another counselor within the agency. The counselor recommended that the appellant-father receive counseling to address depression and anxiety for a minimum of one year. Appellant-father did not follow through and initiate individual counseling.
 {¶ 8} Appellant-father received an alcohol and other drug assessment from Quest Recovery Services. That agency did not recommend any follow up treatment. Appellant-father did submit to random urinalysis during the pendency of the case that revealed him to have used cocaine and marijuana in May 2007. He admitted to marijuana use in January 2007 in his testimony in court. *Page 4 
 {¶ 9} Appellant and his wife were arrested in March 2007 for domestic violence. Appellant was also charged with disruption of public service. The domestic violence charge was reduced to disorderly conduct with persistence. The couple separated from each other in the spring of 2007. Anger management was not a concern raised by appellant-father's parenting evaluation. Initially, appellant-father did not have independent housing and he resided with relatives after the separation from his wife. At the time of the hearing on the motion for permanent custody, appellant-father had an efficiency apartment that has no facilities for the children. He is employed at a McDonald's restaurant.
 {¶ 10} Appellant-father did attend parenting education through Goodwill Services where he received a certificate of attendance. That is the agency's designation for the lowest level of achievement. The appellant's instructor found him to be appropriate in exercising discipline over the children, utilizing techniques he learned in class.
 {¶ 11} On November 29, 2007, the court filed its Findings of Fact and Conclusions of Law terminating appellant-father's parental rights, denying the change of legal custody to Joshua B., and granting permanent custody of the minor children to SCDJFS.
 II. Assignments of Error {¶ 12} On appeal, father asserts the following four assignment of error:
 {¶ 13} "I. STARK THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE BURKHART CHILDREN TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT REASONABLE EFFORTS TO ASSIST THE PARENT TO COMPLETE THE *Page 5 
CASE PLAN AND THAT THE DEPARTMENT USED REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} "II. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE BURKHART CHILDREN TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE IT'S DETERMINATION THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} "III. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE BURKHART CHILDREN TO THE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 16} "IV. THE TRIAL COURT ERRED BY DENYING THE MOTION OF JOSHUA BURKHART, A SUITABLE RELATIVE FOR CUSTODY OF THE BURKHART CHILDREN IN VIOLATION OF THE BEST INTEREST STANDARD."
 A. Burden Of Proof
In the first assignment of error, the appellant-father argues that the trial court erred in granting permanent custody because the evidence did not establish that SCDJFS met its burden of proving that it made reasonable efforts to prevent the *Page 6 
removal of the children from their home or make it possible for them to return home. We disagree.
"[T]he right to raise a child is an `essential' and `basic' civil right." In re: Murray (1990), 52 Ohio St. 3d 155, 157, 556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed. 2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re:Smith (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 17} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re: Estateof Haynes (1986), 25 Ohio St. 3d 101, 103-104, 495 N.E.2d 23.
 {¶ 18} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court *Page 7 
explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St. 3d 77,80, 461 N.E.2d 1273:
 {¶ 19} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v.Flickinger, 77 Ohio St. 3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159; see, also, In re: Christian, Athens App. No. 04CA10, 2004-Ohio-3146;In re: C.W., Montgomery App. No. 20140, 2004-Ohio-2040.
 B. Standard of Review {¶ 20} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re: Myers III, Athens App. No. 03CA23,2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990), 55 Ohio St. 3d 71,74, 564 N.E. 2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact.In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. *Page 8 
 II. Requirements for Permanent Custody Awards {¶ 21} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 22} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 23} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child. *Page 9 
 A. Temporary Custody for at least 12 out of a consecutive 24 month period-R.C. 2151.414(B) (1) (d) {¶ 24} "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B) (1) (d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." In re: C.W., 104 Ohio St.3d 163, 2004-Ohio-6411,818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the Court in C.W. cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411 at ¶ 26,818 N.E.2d at 1180.
 {¶ 25} In the case at bar, the children were removed from the home on August 18, 2006. (T. at 6). The original Complaint for temporary custody was filed in this case on August 21, 2006. (Id.). The motion for permanent custody was filed July 9, 2007. The record establishes that when SCDJFS filed its motion for permanent custody, the children had not been in its custody for twelve or more months of a consecutive twenty-two month period.
 {¶ 26} In the case at bar, the trial court incorrectly determined the children had been in its temporary custody for twelve or more of the prior twenty-two consecutive months. However, this is not fatal to the permanent custody motion filed by SCDJFS. "If a ground other than R.C. 2151.414(B) (1) (d) exists to support a grant of permanent custody, the agency may move for permanent custody on that other ground." In re:C.W., supra 104 Ohio St. 3d 167, 2004-Ohio-6411 at ¶ 27,818 N.E. 2d at 1180. *Page 10 
 B. Reasonable Efforts To Prevent The Removal Of The Children From Their Home Or Make It Possible For Them To Return Home. {¶ 27} In his first assignment of error, the appellant-father argues that the trial court erred in granting permanent custody because the evidence did not establish that SCDJFS met its burden of proving that it made reasonable efforts to prevent the removal of the children from their home or make it possible for them to return home.
 {¶ 28} R.C. 2151.419 states:
 {¶ 29} "(A)(1) Except as provided in division (A)(2) of this section,at any hearing held pursuant to section 2151.28, division (E) ofsection 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts." (Emphasis added.)
 {¶ 30} "By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33, or 2151.353. See R.C. 2151.419(A) (1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute does not refer to a hearing on a motion for permanent custody. Therefore, `[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to *Page 11 
R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' In re: A.C., supra, 2004-Ohio-5531, 2004 WL 2340127, ¶ 30."In re: CF, supra 113 Ohio St.3d at 80, 2007-Ohio-1104 at ¶ 41,862 N.E.2d at 823.
 {¶ 31} "To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the `reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." In re: CF, supra 113 Ohio St. 3d at 81,2007-Ohio-5531 at ¶ 43, 862 N.E.2d at 823.
 {¶ 32} When the state intervenes to protect a child's health or safety, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called `reasonable efforts.' Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub.Int.L.J. 259, 260." In re: CF, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816
at ¶ 28.
 {¶ 33} The record established that SCDJFS had worked with the family since August 2006 on both an informal and formal basis. There were concerns of poor home conditions and hygiene. The agency caseworker spoke with the parents weekly regarding their case plan services. She provided phone numbers, talked to providers, *Page 12 
made appointments, addressed visitation concerns and the agency paid for all of the parent's services.
 {¶ 34} However, the parents displayed an unwillingness to put the program goals into action and continued to have a home that was cluttered, unclean and hazardous for children.
 {¶ 35} We find that the evidence established that SCDJFS did provide services designed to alleviate the problem that led to the children's removal and did make diligent efforts to assist appellant in remedying the problem.
 {¶ 36} Appellant's first assignment of error is overruled.
 C. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a) and the Best Interest of the Children. {¶ 37} In his second and third assignments of error, the appellant-father argues that the trial court's grant of permanent custody is against the manifest weight and sufficiency of the evidence. Specifically, he argues that the trial court's findings that the children should not or could not be placed with him within a reasonable period and that the grant of permanent custody to SCDJFS was in the children's best interest were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 38} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) 1-15, the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed *Page 13 
with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. SeeIn re: William S., 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738;In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328;In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.
 {¶ 39} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 40} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 41} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining *Page 14 
whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 42} "* * *
 {¶ 43} "(16) Any other factor the court considers relevant."
 {¶ 44} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.
 {¶ 45} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B) (1) (a). The trial court found that the evidence established that Dylan and Luna could not be placed with appellant-father within a reasonable period and should not be placed with him.
 {¶ 46} Appellant-father argues that the evidence established that he has actively changed the circumstances in his life that led to the SCDJFS involvement. He has separated from his wife and mother of the children. He has also obtained separate housing and full time employment. Further, appellant-father has been released from Goodwill Parenting. He argues that he has demonstrated a clear ability to parent his children. He has actively participated in the weekly visitations with his children. *Page 15 
 {¶ 47} The evidence demonstrated the successful efforts appellant-father had made in the case to regain custody of his children. On that point, the evidence demonstrates that the improvement the appellant-father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that, regardless of appellant's compliance with aspects his case plan, he was still not able to be a successful parent to his children.
 {¶ 48} During the permanent custody hearing, the court heard testimony from the caseworker Tina Bossart; Ms. Gaetje, appellant's goodwill parenting instructor; and John Coventry, the therapist who conducted the joint counseling sessions.
 {¶ 49} Appellant-father was ordered to comply with a case plan calculated to facilitate the reunification of the family. This case plan included maintaining a safe, clean environment for the children, completing a parenting assessment, Goodwill parenting, substance abuse treatment or evaluation and follow the recommendations of each evaluation. (T. at 8).
 {¶ 50} Appellant-father failed to complete counseling services and tested positive for marijuana on one occasion. (T. at 12; 19-21). He did test negative after the positive test and substance abuse issues were no longer at issue. (T. at 22).
 {¶ 51} At the time of the hearing, appellant-father was residing in a one-room efficiency apartment, lacking adequate space for the children. (T. at 12, 22). He had recently secured this apartment after living with relatives and friend to friend. (T. at 12, 28). He and the mother of the children were involved in joint counseling. (T. at 16). This counseling ended after an incident of domestic violence occurred in early 2006. (T. at 16). Appellant-father did not complete his individual counseling after this incident. Ms. *Page 16 
Bossart indicated, appellant was to contact the counseling agency to set up individual sessions but, as of the time of the hearing, failed to do so. (T. at 20).
 {¶ 52} Appellant-father attended the Goodwill Industries parenting class and received a certificate of attendance, the lowest of three possible certificates. (T. at 19). According to Ms Gaetje the certificate of attendance means, "he met only the minimum requirements. So he didn't fulfill a lot of the obligations of our class." (T. at 31). The biggest concern noted by Ms. Gaetje was appellant's "inability to provide a safe and healthy environment for his children." (T. at 31). Ms. Gaetje conducted a home study of the residence when appellant and the mother were still residing together. (T. at 32). She found the home to be fairly cluttered, smelling of urine, home to several animals and full of ashtrays with cigarette butts. (T. at 32). Subsequent to this home study, appellant and the mother separated after a domestic violence incident. Appellant-father then began living with relatives and friend to friend. (T. at 12, 28). Ms. Bossart testified there were times when she had no address for him. (T. at 28).
 {¶ 53} John Coventry testified he conducted joint counseling sessions between appellant and the mother. (T. at 44). Mr. Coventry began services due to "violence between the two of them." (T. at 44). Mr. Coventry stated appellant-father was not compliant in coming to the counseling sessions. (T. at 45). Mr. Coventry stated appellant-father became involved late 2006, closer to January 2007 and appellant attended "two at the most" sessions. (T. at 46-47).
 {¶ 54} Mr. Coventry then realized the issues in the relationship "were bigger than just couples" counseling. (T. at 48). At that time, Mr. Coventry informed both appellant and mother he could no longer engage them in joint counseling. (T. at 48). Mr. Coventry *Page 17 
then scheduled an appointment for appellant-father to come into the office to be referred to another clinician. (T. at 48). Appellant-father did not keep the appointment and did not reschedule. (T. at 49). Mr. Coventry opined that appellant-father is not compliant with counseling services. (T. at 46).
 {¶ 55} Based upon the foregoing, the Court properly found the children could not or should not be returned to the appellant-father within a reasonable time. Despite offering numerous services, the appellant-father was unable to mitigate the concerns that led to the children's removal. The trial court found the agency caseworker spoke with the parents weekly regarding their case plan services. She provided phone numbers, talked to providers, made appointments, addressed visitation concerns and the agency paid for all of the parent's services.
 {¶ 56} During the best interest portion of the hearing, Ms. Bossart identified the children as Caucasian children suffering from no developmental delays, psychological or medical concerns. (T. at 50-51). The children are placed together. (T. at 131). The children are "doing good" in the home and Luna, who was delayed when removed from appellant's care, has "caught right up. And there's no concerns now." (T. at 51). The children are excited to visit with appellant-father. (T. at 61). The visitations are appropriate. The caseworker also testified that he was both loving and affectionate towards his children. (T. at 60). At the time of the hearing, appellant-father did not have sufficient housing for the children. (T. at 12).
 {¶ 57} Ms. Bossart opined that a grant of permanent custody was in the best interest of the children. (T. at 58). Ms. Bossart stated the children "deserve to have stability. Um . . . a stable home, environment, where they can be raised as healthy *Page 18 
children." (T. at 58). Ms. Bossart testified the children were not bonded to any other person or relative. (T. at 58). A relative had come forward and requested legal custody of the children, but SCDJFS denied them placement after conducting a home study. (T. at 52 — 60).
 {¶ 58} The trial court found "the father shares a bond with both children. The Court finds that despite this bond, the benefits of permanency in the children's lives, particularly given their ages, outweigh the detriments of severing any existing bond."
 {¶ 59} Based on the evidence submitted at trial, the court properly determined the best interest of the children would be served by the grant of permanent custody to SCDJFS.
 {¶ 60} For these reasons, we find that the trial court's determination that appellant-father had failed to reduce the risk to the child and therefore the child could not be placed with him within a reasonable time or should not be placed with him, was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to Stark County Department of Job and Family Services was in the child's best interest was not against the manifest weight or sufficiency of the evidence.
 {¶ 61} Appellant-father's second and third assignments of error are overruled.
 D. Efforts to Identify Appropriate Relative Placement. {¶ 62} In his fourth assignment of error appellant-father asserts the trial court erred by granting permanent custody to the SCDJFS when relatives were interested in assuming legal custody of the child. Appellant-father argues the SCDFJS and the Court *Page 19 
were required by R.C. 2151.412 (G) (5) to place the children with a family member before pursuing and receiving permanent custody. We disagree.
 {¶ 63} R.C. 2151.412 (G), in relevant part, states:
 {¶ 64} "In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 65} "(5) If the child cannot be placed with either of the child's parents within a reasonable period or time or should not be placed with either, if no suitable member of the child's extended family or suitable non-relative is willing to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency."
 {¶ 66} The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.In re: Adoption of Ridenour (1991), 61 Ohio St.3d 319, 324,574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. In re: A.C., 12th
Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶ 17; In re: Turner, 5th Dist. No. 2006CA00062, 2006-Ohio-4906 at ¶ 35; In re:Perry, 4th Dist. Nos. 06 CA 648, 06 CA 649,2006-Ohio-6128 at ¶ 62.
 {¶ 67} A trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody, does not include finding by clear and convincing evidence that no suitable relative was available for placement. In re: *Page 20 Schafer, 111 Ohio St. 3d 498, 2006-Ohio-5513, 857 N.E. 2d 532. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 21 51.41 4 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 21 51.41 4(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors."Schafer, supra 111 Ohio St. 3d. at 498, 2006-Ohio-5513, at ¶ 64,857 N.E. 2d at 539; In re: Avon, 5th Dist. No. 2006-AP-09-0051, 2007-Ohio-1 431 at 726.
 {¶ 68} During the best interest phase of the permanent custody hearing, the court received testimony concerning Joshua B. the paternal uncle of the children who had requested custody. The testimony included the caseworker, the mother of the children, and appellant.
 {¶ 69} The trial court found SCDJFS did undertake efforts to identify appropriate relative placement for the children. The agency conducted family "team" meetings with the parents in January 2007, to attempt to identify relatives. The mother initially identified no one in her family, as did the appellant-father. One month prior to the filing of the permanent custody action, relative placement forms were given to both parents. The maternal grandfather had sought placement of the children and filed a motion in this case to intervene for custody; however, that motion has been withdrawn.
 {¶ 70} Joshua B. and his wife live in the home of his 69-year-old grandmother. The grandmother pays the home mortgage each month and Joshua pays for utilities and food. Joshua and his wife receive minimal income working at McDonalds. Their *Page 21 
financial resources were overstated to the agency. The couple is currently expecting another child.
 {¶ 71} The caseworker Tina Bossart testified the home study of the relative was not approved due to physical concerns in the home, mental health concerns and financial instability. (T. at 67). Ms. Bossart stated visitation between the children and the relative produced no observable bonding between the parties despite several months of visits. (T. at 58, 63). The children had no previous relationship with the relatives and did not know the relatives when the visitation began. (T. at 63). Ms. Bossart reported Dylan did not want to visit with the relatives. (T. at 64).
 {¶ 72} Mother voiced her concern with relative placement of her children. Mother stated, "I don't feel, that they could handle my children, they can't even handle their own." (T. at 81). Mother stated the relatives were "too consumed with what they were doing, rather than what he (their son) was doing." (T. at 82). Mother recalled instances where the relatives did not feed their child and he was eating from the trash or picking food off the floor to eat. (T. at 82). Mother also described verbal and physical confrontations between the proposed custodians, occurring during the months the proposed custodians were residing at mother's home, approximately January 2007. (T. at 83). These incidents including Joshua kicking a TV, telling his son that he was not his father, and telling his son that he hated him. (T. at 83). Mother also stated Joshua brought drugs, specifically marijuana, into her home and they all smoked marijuana together. (T. at 84). *Page 22 
 {¶ 73} In August 2007, the relatives were offered the chance to submit a hair follicle test at the expense of SCDJFS. (T. at 105). They waited until the end of October 2007 to submit to the test. (T. at 111).
 {¶ 74} Mother preferred her children be adopted than placed with the relatives. (T. at 87; 92). On cross-examination, Mother stated she did not have anything against the relatives, but "They are not the best for my kids and I know that. And no matter how much it kills me, I know that." (T. at 91).
 {¶ 75} The Court concluded that given the totality of the concerns raised regarding placement, the relative's home exhibits many of the same problems as the home of the parents. The Court found that placement with the relatives would be contrary to the best interest of the children.
 {¶ 76} Based upon the testimony, the court properly denied the motion for a change of legal custody. There was sufficient evidence submitted at the hearing to call into question, the relatives' ability to provide a long term, stable placement for the children. The trial court did not abuse its discretion in denying said request and granting permanent custody to the SCDJFS.
 {¶ 77} Appellant's fourth assignment of error is overruled. *Page 23 
 {¶ 78} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. By Gwin, J., Hoffman, P.J., and Farmer, J., concur
 Gwin, J., Hoffman, P.J., and Farmer, J., concur. *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant. *Page 1