[Cite as *In re S.B.*, 2020-Ohio-6753.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                              |     |                                                                                              |
| ---------------------------- | --- | -------------------------------------------------------------------------------------------- |
|                              | :   | JUDGES:                                                                                      |
|                              | :   |                                                                                              |
|                              | :   | Hon. John W. Wise, P.J.                                                                      |
|                              | :   | Hon. Patricia A. Delaney, J.                                                                 |
| IN RE S.B.                   | :   | Hon. Earle E. Wise, Jr., J.                                                                  |
|                              | :   |                                                                                              |
|                              | :   | Case No. 2020 CA 00044                                                                       |
|                              | :   |                                                                                              |
|                              | :   |                                                                                              |
|                              | :   |                                                                                              |
|                              | :   |                                                                                              |
|                              | :   |                                                                                              |
|                              | :   | O P I N I O N                                                                                |

CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas, Juvenile Division, Case
                                No. F 20180675

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         December 17, 2020

APPEARANCES:

For Mother-Appellant:                       For LCJFS-Appellee:

JERMAINE L. COLQUITT                        WILLIAM C. HAYES
33 W. Main St.                              LICKING COUNTY PROSECUTOR
Suite 109
Newark, OH 43055                            PAULA M. SAWYERS
                                            20 S. Second St., 4th Floor
                                            Newark, OH 43055

*Delaney, J.*

{¶1}   Mother-Appellant appeals the June 19, 2020 judgment entry of the Licking County Court of Common Pleas, Juvenile Division, granting permanent custody of A.G. to the Appellee, Licking County Job & Family Services and placing S.B. into a Planned Permanent Living Arrangement with Appellee, Licking County Job & Family Services.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother-Appellant is the biological mother of four children: S.B. (born on July 28, 2003); A.G. (born on July 25, 2006); and twins A.G. and J.G. (born on June 9, 2008). The twins are not part of this appeal.

{¶3}   The father of S.B. is H.B. The father of A.G. is R.N. The fathers had no relationship with their children and were in prison. Mother was in a 15-year relationship with J.G., the biological father of the twins. J.G. has a history of substance abuse and criminal activity, including a felony domestic violence conviction in February 2019.

{¶4}   Appellee Licking County Job & Family Services ("LCJFS") became involved with Mother and her children in September 2018 based on allegations of neglect. It was alleged that Mother and J.G. were involved with drugs and had committed domestic violence. The home was unkempt, infested with insects, and the children exhibited symptoms of chronic head lice. Upon investigation by LCJFS, it filed a complaint alleging dependency on October 3, 2018. The four children were removed from the home and placed in the Emergency Shelter Care Custody of LCJFS on October 3, 2018. The twins were placed in the temporary custody of their caregiver, subject to protective supervision. S.B. and A.G. were placed in separate foster care homes.

{¶5} An uncontested adjudicatory hearing was held on December 31, 2018. The children were determined to be dependent and placed in the temporary custody of LCJFS.

{¶6} On August 29, 2019, LCJFS filed a Motion for Permanent Custody for A.G. LCJFS also filed a Motion to Modify Disposition to a Planned Permanent Living Arrangement (PPLA) for S.B. The motions were set for a hearing before the Magistrate on January 14, 2020. The following facts were adduced at the hearing.

{¶7} Mother's case was assigned to Caitlin Gladstone, ongoing social worker with LCJFS. Gladstone filed Mother's first case plan on October 30, 2018. Gladstone met with Mother on November 27, 2018 to review the case plan. The case plan had four objectives: substance abuse, housing, employment, and parenting. Mother's drug of choice was methamphetamines. The case plan required her to obtain substance abuse treatment and drug screening. Mother was required to secure stable employment and housing which would place her in a position to provide for the financial and housing needs for her children. She finally had to complete parenting classes. Mother did not agree with all the case plan objectives and felt she only needed to address housing and employment.

{¶8} The case plan provided for supervised visitation with S.B. and A.G. Mother had her first visit on October 16, 2018. Her second visit was scheduled for October 30, 2018 and Mother did not appear. From October 2018 to July 2019, Mother was deep into her drug addiction. She did not participate in visitation or any services provided by LCJFS. She did not contact Gladstone or LCJFS.

{¶9} On February 1, 2019. Gladstone filed an amended case plan that removed Mother from the cover page due to Mother's lack of contact with LCJFS.

{¶10} After the children were removed from the home, Mother was homeless. In June 2019, Mother moved to a recovery house and engaged services with the Alcohol and Drug Freedom Center of Knox County. She completed her diagnostic assessment on June 4, 2019, where she was diagnosed with severe amphetamine type stimulant use disorder, severe cannabis use disorder, and mild cocaine stimulant use disorder. Her treatment plan was to attend intensive outpatient program and weekly individual counseling. She started individual counseling on June 14, 2019 and IOP on June 17, 2019.

{¶11} Mother reached out to Gladstone in July 2019 and expressed an interest in reunifying with her children. Mother and Gladstone met on August 12, 2019, where Mother admitted she had a substance abuse disorder, but her last use was May 24, 2019 when she got high on her birthday.

{¶12} Mother moved from the recovery house and rented a room in a boarding house. She lived there for a few months and in September 2019, Mother rented an apartment with J.G. Gladstone would not conduct a home visit to the apartment because J.G. threatened her. In January 2020, Mother received a voucher for subsidized housing and independently leased a two-bedroom apartment. J.G. was in prison. Mother slept in the common room of the apartment and stated the four children could share the two bedrooms.

{¶13} Mother had no employment. She had time restrictions due to her substance abuse treatment that limited her working hours. She had a job as a gas station attendant for a few weeks and did some cleaning work. She consistently applied for employment and was applying for Social Security disability due to her substance abuse disorder.

{¶14} Mother completed IOP on November 25, 2019. She still attended individual counseling sessions. She took drug screens on June 21, 2019, July 24, 2019, and January 9, 2020, which were negative.

{¶15} When J.G. was arrested and incarcerated, Mother obtained independent housing. Mother visited him once in jail. She stated she was no longer in a relationship with him but remained in contact with him because of the children. She stated she was unaware he was using drugs and understood his substance abuse was a risk to her own recovery. Gladstone, at Mother's request, gave J.G. a separate case plan for reunification with the twins.

{¶16} Mother attended parenting classes and successfully completed the session. During the pendency of the case, Mother had a poor relationship with S.B. and A.G. Mother appeared for her first visit with the children on October 16, 2018, but she did not appear for her second visit on October 30, 2018. On November 6, 2018, Gladstone met with both children and they expressed they no longer wished to visit with Mother. Mother reappeared in July 2019 and expressed a desire to reunify with her children. Mother said she wanted to participate in joint counseling sessions with the children. The children's case manager stated the children had no desire to participate in joint counseling with Mother and it would be detrimental to their individual trauma recovery.

{¶17} The children were placed in separate foster care in October 2018. Neither child has special physical needs, but they require mental health treatment due to trauma. S.B. is bonded with his foster parents and siblings. He struggles in school and needed to repeat the ninth grade. He was in counseling and was being taught independent living skills. S.B. expressed to the Guardian ad Litem that he did not wish to be reunified with

Mother and preferred to remain in his foster home. He did not want to be adopted. A.G. started her placement with the caregiver for the twins. A.G. was moved to a foster family but was transitioned to Maternal Aunt after A.G. struck a foster sibling. A.G. was removed from Maternal Aunt's home due to behavioral issues. A.G. was placed in a foster to adopt home, where she is doing better, and the family wants to adopt her. She struggles socially and with anger management. A.G. does not want to go back to Mother's care.

{¶18} The Guardian ad Litem recommended that A.G. be placed in the permanent custody of LCJFS and a PPLA be granted for S.B.

{¶19} The Magistrate issued his Decision on April 16, 2020. He first found the children were placed in the temporary custody of LCJFS on December 31, 2018, approximately 13 months before the January 14, 2020 hearing. The Magistrate found reasonable efforts were made to prevent the continued need for removal, but notwithstanding the reasonable case planning and diligent efforts by LCJFS, the conditions that caused the children to be placed outside the home had not sufficiently improved to allow for reunification. The Magistrate found the biggest issue was Mother's relationship with the children:

> Both children have expressed that they don't want to see [Mother] or live in her home. This is understandable, as both are angry with her for disappearing from their lives in October of 2018 to August of 2019. These children are old enough to understand and appreciate these cases and the circumstances which gave rise to these cases. [Mother] expressed that she wants to engage in counseling with the children. This is not a bad idea. However, this would only work if the children are able and willing to do so.

Counseling isn't something that will make it all better in a couple of weeks. It may take months and given where this case stands, it is unlikely that a single extension of temporary custody would give enough time for this counseling to be successful enough for reunification to occur.

(Magistrate's Decision, Apr. 16, 2020).

{¶20} The Magistrate considered the statutory best interest factors and recommended it was in the best interests of the children that permanent custody of A.G. be granted to LCJFS. The Magistrate ordered that S.B. be placed in a PPLA with LCJFS.

{¶21} On June 1, 2020, Mother filed objections to the Magistrate's Decision.

{¶22} On June 19, 2020, the trial court overruled Mother's objections and adopted the Magistrate's Decision. It is from this judgment entry that Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶23} Mother raises two Assignments of Error:

{¶24} "I. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF A.G. AND PPLA OF S.B. TO LCDJFS IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, THE AGENCY DID NOT PROVE THAT A.G. CANNOT OR SHOULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME, DID NOT MAKE THE STATUTORY SHOWINGS FOR PPLA, AND DID NOT PROVE THAT GRANTING EITHER MOTION WAS IN THE CHILD'S BEST INTEREST.

{¶25} "II. WHETHER THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY IS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, WHETHER THE AGENCY MADE THE NECESSARY STATUTORY SHOWINGS IN

SUPPORT OF ITS PPLA MOTION, AND WHETHER EITHER OF THESE MOTIONS WAS IN THE BEST INTEREST OF THE CHILD."

## ANALYSIS

### I. and II.

{¶26} In her two Assignments of Error, Mother argues the trial court erred when it granted permanent custody of A.G. to LCJFS and granted LCJFS's motion to place S.B. in a planned permanent living arrangement with LCJFS. We separately consider Mother's arguments as to each child's dispositional order.

### A.G. and Permanent Custody

{¶27} Mother contends in her first and second Assignment of Error that the judgment of the juvenile court to grant permanent custody of A.G. to LCJFS was not supported by clear and convincing evidence, nor was the judgment in the best interest of the child. We disagree.

### Standard of Review

{¶28} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree

of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶29} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶30} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶31} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more

public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶32} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶33} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child. Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child in a permanent custody proceeding, the court shall consider all relevant factors.

**12 Out of 22 Months**

{¶34} In the Magistrate's Decision, the Magistrate notes that A.G. was placed in the temporary custody of LCJFS on December 31, 2018, "some 13 months before this hearing." (Magistrate's Decision, Apr. 16, 2020). R.C. 2151.414(B)(1)(d) allows the juvenile court to grant permanent custody when the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period. When calculating this time period, however, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-

month period set forth in R.C. 2151.414(B)(1)(d)." *In re Dylan B.*, 5th Dist. Stark No. 2007-CA-00362, 2008-Ohio-2283, 2008 WL 2025086, ¶ 24.

{¶35} In the case sub judice, the children were removed from the home on October 3, 2018. They were adjudicated dependent and placed in the temporary custody of LCJFS on December 31, 2018. LCJFS filed its motion for permanent custody on August 29, 2019. December 31, 2018 to August 29, 2019 was a period of seven months and 20 days. When LCJFS filed its motion for permanent custody, A.G. had not been in the temporary custody of LCJFS for twelve or more months of a consecutive twenty-two-month period. At the time of the hearing, A.G. had been in the temporary custody of LCJFS for 12 months and 14 days. The trial court's mention of R.C. 2151.414(B)(1)(d) as one of the reasons to grant permanent custody of A.G. to LCJFS is not decisive of the ultimate issue of custody. "If a ground other than R.C. 2151.414(B)(1)(d) exists to support a grant of permanent custody, the agency may move for permanent custody on that other ground." *In re Dylan B.*, 5th Dist. Stark No. 2007-CA-00362, 2008-Ohio-2283, 2008 WL 2025086, ¶ 26 citing *In re: C. W.*,104 Ohio St.3d 167, 2004-Ohio-6411 at ¶ 27, 818 N.E.2d at 1180. LCJFS moved for permanent custody of A.G. on other grounds and the juvenile court found those were demonstrated by clear and convincing evidence.

**Reasonable Efforts**

{¶36} Mother contends the juvenile court erred when it found that A.G. could not be placed with Mother within a reasonable time. The juvenile court relied upon R.C. 2151.414(E)(1) and (4) in making its decision. The relevant statutory provisions state:

> (E) In determining at a hearing held pursuant to division (A) of this section
>
> or for the purposes of division (A)(4) of section 2151.353 of the Revised

Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able

to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶37} Mother argues by evidence of the completion of her case planning objectives, she did not fail continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. Mother also contends LCJFS did not engage in reasonable case planning nor did it make diligent efforts in this case because it unambiguously refused to facilitate visitation between Mother and the children. Mother states that when the children stated they did not want to visit with Mother, LCJFS made no further attempts promote Mother's relationship with her children.

{¶38} The juvenile court described Mother's efforts during the pendency of the case as having "mixed results." (Magistrate's Decision, Apr. 16, 2020). We agree with the juvenile court's characterization of Mother's efforts. The juvenile court found that Mother failed to remedy the problems that initially caused the children to be placed outside of the home and demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. Mother contends the completion of her case plan objectives is evidence that she remedied the problems and has a willingness to provide an adequate home for the children. Mother had a significant substance abuse issue, which she did not address for the first six months of the case. She started treatment in June 2019 and had maintained her sobriety at the time of the hearing. She did report using marijuana to celebrate her birthday. Mother had inconsistent housing. Her longest period with stable housing was with J.G. through the

fall of 2019. She obtained a voucher for housing and independently moved into an apartment one week before the hearing. Mother completed parenting classes. Mother had no income, but she was applying for jobs and Social Security disability income. She did some house cleaning.

{¶39} The record in this case shows Mother exhibited a lack of commitment towards her children by failing to regularly support, visit, or communicate with them when she was able to do so. We will further discuss this argument in the best interest analysis, but Mother contends it was not her lack of commitment but the failure of LCJFS to facilitate the relationship between her and the children; therefore, there was no reasonable case planning and diligent efforts by the agency to assist Mother. It is an undisputed fact that Mother disappeared from the lives of her children from October 2018 to July 2019 to pursue her drug addiction. During the time their Mother was gone, her teenaged children moved forward with their lives in new homes. Mother entered substance abuse treatment in June 2019. In July 2019, Mother reengaged with Gladstone and wanted to reconnect with her children. At that time, S.B. was 16 years old and A.G. was 14 years old. S.B. had been in the same foster home and was working towards independent living, as he was only two years away from being a legal adult. A.G. had been in four foster placements, the last being a foster-to-adopt home where the family was interested in pursuing adoption. Gladstone asked the children if they would meet with Mother and they refused. The GAL reported the children would not meet with Mother. The children's case manager recommended that the children not meet with Mother. Mother did not file a contempt motion against LCJFS for lack of visitation.

{¶40} As the juvenile court noted, counseling between Mother and children would be a good idea but was not feasible. The children were not willing to work on the relationship and based on the status of the case and the age of the children, a single extension of temporary custody might not be enough time to repair the relationship to allow reunification.

{¶41} LCJFS gave Mother visitation with the children and Mother attended only one visit before disappearing until July 2019. The children's refusal to meet with Mother when she chose to return was the consequence of Mother's disappearance from her children's lives. We cannot say in this case that LCJFS did not use diligent efforts to facilitate a relationship between Mother and her teenaged children.

**Best Interests**

{¶42} The next step in the analysis is whether LCJFS showed by clear and convincing evidence that a grant of permanent custody was in the best interest of the children. R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. Those factors include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies

or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶43} Mother's successful completion of a case plan is not dispositive on the issue of reunification. *In re B.P.*, 5th Dist. Licking No. 2000 CA 00031, 2020-Ohio-3734, 2020 WL 4013125, ¶ 32 citing *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. While it may be in Mother's best interest to complete the case plan, this is only one factor for a trial court to consider what is in the best interest of the child. *In re A.H.*, 5th Dist. Richland No. 18CA96, 2019-Ohio-1509, 2019 WL 1777306, ¶ 38. Where a parent has participated in his case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In re A.H.*, 5th Dist. Richland No. 18CA96, 2019-Ohio-1509, 2019 WL 1777306, ¶ 39 citing *In the Matter of A.L. and J.L.,* 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481.

{¶44} The wishes of the children were expressed through the children's statements to the GAL. The GAL report filed on January 3, 2020 stated the children both expressed that they did not want to visit or live with Mother. The GAL recommended it was in the best interests of A.G. to be placed in the permanent custody of LCJFS and S.B. placed in PPLA with LCJFS.

{¶45} Mother contends the juvenile court could not make a determination as to the interaction and interrelationship with the child and parent because Mother had not been permitted to visit with the children since July 2019. In support of her argument, she cites this Court to *In re C.S.*, 9th Dist. Summit No. 25344, 2010-Ohio-4463. In that opinion, the majority held the juvenile court's award of permanent custody was against the weight of the evidence because the child had not visited with mother for 18 months. The case plan allowed for visitation but with parameters due to the mother's history of abuse of the child. The mother did not follow the parameters and the agency would not permit visitation. The juvenile court granted permanent custody, but the Ninth District reversed, holding it could not say the agency made reasonable efforts toward reunification or that it was in the best interests of the child by granting permanent custody because there was no evidence of the interaction or interrelationship with the child and the mother. *Id.* at ¶ 10. In dissent, Judge Carr noted that limitations or restrictions on visitations based on the well-being of the child were common in cases of children adjudicated dependent or neglected. *Id.* at ¶ 60. The agency did not deny the mother visitation. The mother failed to abide by the limitations put in place by the agency and therefore, visitation could not occur. *Id.* at ¶ 62-63. "The only person who foreclosed the opportunity for visitation between Mother and the child was Mother herself. It does not further the best interests of

children to allow their parents to balk at the requirements designed to ensure the safety of their children during visitation and then cry procedural foul when their parental rights have been terminated." *In re C.S.*, 9th Dist. Summit No. 25344, 2010-Ohio-4463, 2010 WL 3683392, ¶ 63 (Carr, dissenting).

{¶46} The facts of *In re C.S.* are different from those in the present case. In our case, it was the children who refused visitation with Mother and LCJFS supported the children's choice based on their well-being. The reason for refusing visitation, however, was similar to that in *In re C.S.* LCJFS did not deny Mother visitation at the inception of the case. Mother foreclosed the opportunity for visitation with her children when she attended one visit with the children and disappeared from the children's lives.

{¶47} Based on the evidence in the record, we find the juvenile court's award of permanent custody of A.G. to LCJFS was not against the manifest weight of the evidence. LCJFS presented evidence to allow the juvenile court to find, by clear and convincing evidence, that the award of permanent custody was in the best interest of A.G. A.G. is a teenager who expressed a desire to remain with her foster-to-adopt family and achieve permanence and stability. We affirm.

## S.B. and PPLA

{¶48} Mother next argues that LCJFS failed to meet its burden by clear and convincing evidence that S.B. should be placed in a PPLA with LCJFS. We disagree.

{¶49} A planned permanent living arrangement, or PPLA, is defined as a juvenile court order that: (1) gives a public children services agency legal custody of a child without terminating parental rights; and (2) also lets the agency "make an appropriate placement of the child and to enter into a written agreement with a foster care provider or with another

person or agency with whom the child is placed." R.C. 2151.011(A)(38). Both R.C. 2151.353 and R.C. 2151.415 contain provisions that allow PPLAs to be granted in juvenile cases.

{¶50} In this case, LCJFS filed a Motion to Modify Disposition pursuant to R.C. 2151.415(A)(5) and (C)(1)(c), requesting an order for placing S.B. in a PPLA with LCJFS. R.C. 2151.415(A) states:

> (A) * * * [A] public children services agency * * * that has been given temporary custody of a child pursuant to section 2151.353 of the Revised Code, * * * shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be issued by the court:
>
> * * *
>
> (5) An order that the child be placed in a planned permanent living arrangement;
>
> * * *

{¶51} If a PPLA is requested, R.C. 2151.415(C)(1) outlines the following evidentiary standard for which the juvenile court to determine if a PPLA is appropriate:

> (C)(1) If an agency pursuant to division (A) of this section requests the court to place a child into a planned permanent living arrangement, the agency shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child. A court shall not place a child in a planned

permanent living arrangement, unless it finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, that the child is sixteen years of age or older, and that one of the following exists:

(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.

(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D)(1) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative;

(c) The child has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living.

{¶52} If a PPLA is granted, R.C. 2151.415(C)(2) requires the following:

If the court issues an order placing a child in a planned permanent living arrangement, both of the following apply:

(a) The court shall issue a finding of fact setting forth the reasons for its finding;

(b) The agency may make any appropriate placement for the child and shall

develop a case plan for the child that is designed to assist the child in finding

a permanent home outside of the home of the parents.

{¶53} There is no dispute that at the time of the hearing, S.B. was 16 years old. As of the date of this opinion, S.B. is now 17.5 years old.

{¶54} At the hearing, LCJFS presented evidence that S.B. been counseled on the permanent placement options available, was unwilling to accept or unable to adapt to a permanent placement, and was in an agency program preparing for independent living. Gladstone and the GAL reported that S.B. was counseled on his permanent placement options and he was consistent with his desire to stay in his foster home without adoption. He did not want to visit or live with Mother or his father. The case plan filed on October 30, 2018 stated that S.B. would be provided an independent living social worker who would work with him on independent living skills. The amended case plans included training in independent living skills for S.B.

{¶55} Based on our analysis of best interest for A.G., we likewise find the evidence presented by LCJFS supports the juvenile court's determination it was in the best interest of S.B. to be placed in a PPLA with LCJFS.

{¶56} We find pursuant to R.C. 2151.415(C)(1) and (C)(2), there was clear and convincing evidence to support the juvenile court's determination that S.B. be placed in a PPLA with LCJFS.

## CONCLUSION

{¶57} Based on the foregoing, we overrule Mother's two Assignments of Error.

{¶58} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.