[Cite as *In re B.H.*, 2014-Ohio-5790.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: B.H. | : | JUDGES: |
|  | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 14-CA-53 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:   Civil appeal from the Fairfield County Court
of Common Pleas, Juvenile Division, Case
No.  13 AB  0097

JUDGMENT:   Affirmed

DATE OF JUDGMENT ENTRY:   December 29, 2014

APPEARANCES:

For - Appellant                                  For - Appellee

KRISTI R. MCANAUL                      JULIE BLAISDELL
660 Hill Rd. N.                              239 West Main Street, Ste. 101
P.O. Box 220                                Lancaster, OH  43130
Pickerington, OH  43147

For - Father                                    Guardian ad Litem
DAVID A. TAWNEY                        ANGELA J. SEIMER
117 West Main Street, Ste. 208      124 West Main Street, Ste. 201
Lancaster, OH 43130                    Lancaster, OH 43130

*Gwin, J.*

{¶1} Appellant-mother Ashley Van Atta appeals the August 21, 2014, Judgment Entry of the Fairfield County Court of Common Pleas, Juvenile Court Division, which terminated her parental rights with respect to her minor child, B.H. (b. Apr. 17, 2013) and granted permanent custody of the child to appellee, Fairfield County Child Protective Services (hereinafter "FCCPS").

*Facts and Procedural History*

{¶2} A Complaint for Dependency was filed on May 1, 2013, alleging that B.H. was a dependent minor pursuant to R.C. 2151.04(C). A shelter care hearing was conducted on May 1, 2013, and B.H. was placed in the temporary custody of FCCPS. Neither party objected to the jurisdiction of the trial court at the time of the trial on the dependency complaint. Further, Mother testified that she went to Fairfield Medical Center when she went into labor for B. H. and then was transferred to Ohio State University Hospital where she gave birth to the child. Mother further testified that she gave a Fairfield County address as her address to Ohio State University Hospital.

{¶3} B. H. has remained in FCCPS' temporary custody since July 11, 2013. Reviews were conducted concerning the case on September 24, 2013, December 16, 2013, March 6, 2014 and April 22, 2014.

{¶4} On April 22, 2014, FCCPS filed a motion requesting that B. H. be placed in the permanent custody of FCCPS. A Pretrial concerning the pending motion was held on July 2, 2014.

{¶5} The following facts concerning appellant-mother were found by the trial court as established during the July 22, 2014 evidentiary hearing on the motion for permanent custody.

{¶6} Prior to the commencement of the hearing, the Court noted for the record that Mother, through counsel, had filed a "Motion of [Mother] for Awarding Permanent Custody of the Minor Child to her Mother" on July 18, 2014. The Court noted that this Motion was not served on all the parties to the case and was not filed at least seven (7) days prior to the hearing as required by the Juvenile Rules and Civil Rules of Procedure. The trial court further found, the Motion is not appropriate because the motion asks the Court to place B.H. in the "permanent custody" of an individual. The trial court ruled that R.C. 2151.413 does not allow a parent to file a motion for permanent custody, but specifically reserves that right to a "public children services agency or private child placing agency." Further, R.C. 2151.413 only permits permanent custody to be granted to an agency not to an individual. Therefore, the trial court overruled the motion filed by Mother. However, the court noted that should the court not grant the motion for permanent custody filed by FCCPS, the Court would then schedule Mother's motion for further proceedings.

{¶7} Brad Heft is the alleged father of B. H.[1] Paternity has not been established. Brad Heft is 32 years old. Throughout his adult life, Brad Heft has been incarcerated 31 times in the Fairfield County jail. He has been incarcerated in a state penal institution twice. He has also been incarcerated in a jail in Florida, and in Hocking County, Ohio. Brad Heft is repeatedly incarcerated, and the repeated incarceration

---

[1] Brad Heft is not a party to this appeal.

prevents Brad Heft from providing care for B.H. Brad Heft admitted that he did not contact nor did he participate with FCCPS in 2013, even though he was not incarcerated for much of 2013. There has been no visitation between Brad Heft and B. H. since approximately May 2013. Brad Heft has abandoned the child. Brad Heft admits that he is in no position to care for B. H. as of the date of the permanent custody, July 22, 2014.

{¶8}    FCCPS developed a case plan to assist Ashley Van Atta to remedy the problems that caused B. H. to be removed from the home. Ashley Van Atta agreed that the case plan was reasonable and signed the case plan in May 2013. FCCPS had concerns about substance abuse issues, parenting issues, stable housing, and economic stability.

### Substance abuse.

{¶9}    Mother was referred by FCCPS to American Court Services, a company that screens for drugs and/or alcohol. During the period in 2013 when Mother was living in Columbus, Ohio, FCCPS linked her with the Columbus office of American Court Services to assist in making her screens for drugs and/or alcohol. Despite FCCPS' efforts, Mother was not compliant with submitting to screens. From May 2013 to February 2014, Mother missed 15 screens for drugs and/or alcohol. In February 2014, she became somewhat more compliant with submitting to screens, as she missed only three screens from February 2014 to July 22, 2014. In December 2013, Mother tested positive for opiates, morphine, and buprenorphine. Mother has not consistently been compliant with submitting to random screens for drugs and/or alcohol, and thus has not consistently been able to demonstrate that she is clean and sober.

{¶10} Mother was referred by FCCPS to The Recovery Center, a facility for treatment services for drug and/or alcohol issues. Mother was also referred by FCCPS to the Fairfield County Family Court program, a drug court program for parents with substance abuse issues involved with FCCPS. Mother declined participation in the Fairfield County Family Court Program. Mother's substance abuse issues concern opiate use and marijuana use.

{¶11} Beginning in May/June, 2013, Mother engaged in drug and/or alcohol recovery services at The Recovery Center. She completed her assessment in June 2013, and her first session with her individual counselor was August 13, 2013. It was recommended that she meet with her counselor, Jodi Clutter, weekly. The Recovery Center diagnosed Mother as being opioid dependent, marijuana dependent, and having anxiety.

{¶12} Mother's attendance for individual counseling at The Recovery Center is as follows,

> August 13, 2013- - Mother attended the appointment;
>
> September 9, 2013 - Mother did not show up for the appointment;
>
> September 16, 2013 - Mother did not show up for the appointment;
>
> October 1, 2013 - Mother cancelled;
>
> October 8, 2013 - Mother did not show up for the appointment;
>
> October 15, 2013 - Mother cancelled;
>
> October 28, 2013 - Mother attended the appointment;
>
> November 8, 2013 - Mother attended the appointment;
>
> November 15, 2013 - Mother cancelled;

November 19, 2013 - Mother attended the appointment;

November 26, 2013 - Mother attended the appointment;

December 3, 2013 - Mother attended the appointment;

December 10, 2013 - Mother attended the appointment

December 17, 2013- Mother attended the appointment;

December 23, 2013 - Mother attended the appointment;

December 30 2013 - Mother attended the appointment;

January 7, 2014 - Mother cancelled (bad weather);

January 14, 2014- Recovery Center had to cancel the appointment;

January 21, 2014 - Mother attended the appointment;

January 28, 2014 - Mother attended the appointment;

February 3, 2014 - Mother cancelled (doing her taxes);

February 7, 2014 - Mother attended the appointment;

February 17, 2014 - Mother attended the appointment;

February 24, 2014 - Mother attended the appointment;

March 3, 2014 – Mother attended the appointment;

March 10, 2014 - Mother cancelled (did not feel well);

March 17, 2014 - Mother attended the appointment;

March 24, 2014 - Mother attended the appointment;

March 31, 2014 - Mother cancelled;

April 14, 2014 - Mother missed the appointment (did not have a ride);

April 21, 2014 - Mother attended the appointment;

April 28, 2014 - Mother attended the appointment;

May 12, 2014 - Mother attended the appointment;

May 30, 2014 - Mother did not show up for the appointment;

June 9, 2014 - Mother attended the appointment;

June 16, 2014 - Recovery Center had to cancel the appointment;

June 30, 2014 - Mother arrived late for the appointment, but was seen by Counselor Clutter;

July 17, 2014 - Mother arrived late for the appointment and was not seen by Counselor Clutter.

{¶13} Mother's attendance for group counseling at The Recovery Center is as follows,

May 6, 2014 - Mother attends her first Women's group at the Recovery Center;

May 13, 2014 - Mother is late for group - The Recovery Center offers to allow her to stay for the group, although she will not be given credit for attending it, Mother leaves;

May 20, 2014 - Mother attends group;

May 27, 2014 - Mother cancels;

June 3, 2014 - Mother attends group;

June 10, 2014 - Mother does not show up for group;

June 17, 2014 – Mother attends group;

June 24, 2014 - Mother attends group;

July 1, 2014 - Mother attends group;

July 8, 2014 - Mother attends group;

July 15, 2014- Mother attends group

{¶14} The trial court found it noteworthy that while Mother was missing appointments with Jodi Clutter at The Recovery Center, she was attending appointments at The Recovery Center to obtain and maintain her prescription for suboxone. It is also noteworthy that FCCPS offered to facilitate transportation for Mother to The Recovery Center appointments, but Mother did not utilize this transportation.

{¶15} During the appointment of October 28, 2013, The Recovery Center stressed to Mother the importance of her attending. The parties entered into an agreement at this time. This contract indicated that if Mother were to miss any further appointments at The Recovery Center, she could be unsuccessfully discharged from the program.

{¶16} Mother has continued to miss appointments at The Recovery Center, but Jodi Clutter cannot discharge Mother from the program as long as Mother is in the suboxone program at The Recovery Center. The suboxone program at The Recovery Center has its own requirements for maintaining participation in its program and it appears that Mother has violated those requirements also, although no action had been taken to remove her from the suboxone program as of July 22, 2014. Mother's tenuous status with The Recovery Center's counseling program and suboxone program was found to be relevant to the trial court.

{¶17} In addition to attendance issues, Mother has not utilized the counseling that she has attended. Mother after 11 months of recovery treatment, is still wavering

between the pre-contemplation stage of change and the contemplation stage of change. Mother continues to surround herself with people who are identified as triggers for her drug use. These people include Brad Heft, Bernadine Heft, Alice Peters (Mother's mother) and Mother's brother.

{¶18} Mother has not developed a sober support system, nor has she developed the tools necessary for long-term sobriety. Mother is not being completely honest with her counselor, as Mother has violated court orders by having contact with Brad Heft on four occasions in 2014, but has only mentioned one of the occasions to her counselor. The trial court found that Mother has not successfully completed treatment for her drug and/or alcohol issues and has not successfully complied with this aspect of the case plan.

### *Housing.*

{¶19} Mother has obtained appropriate housing in February 2014. Metropolitan Housing has strict rules on who may live in this residence, Since February 2014, Mother has placed her housing in jeopardy by allowing Brad Heft's mother, Bernadine Heft, to reside with her, and only recently taking measures to add Bernadine Heft to her lease. Mother has successfully obtained housing, but is not complying with what is necessary to maintain housing. In addition, the water for her residence has recently been turned off. Mother's solution to her financial issues with the water department is to have Bernadine Heft pay a portion of the bill and to solicit a local church to pay the remainder of the bill. Mother has not taken any personal responsibility as to solving her water issue.

{¶20}  The trial court found Mother has not fully complied with this aspect of her case plan and all of this information is relevant to the Court.

### *Employment*

{¶21}  Mother is unemployed. FCCPS referred Mother to the Work Net program to assist her with job seeking skills and provide her with leads on jobs. FCCPS further offered to provide transportation to Mother for her to look for a job.

{¶22}  Mother reports that she has "too many appointments" to attend and therefore it is difficult for her to have a job. Upon review of her appointments, it appears that she has approximately six (6) hours a week of appointments. None of these appointments are on Saturday or Sunday, nor are any in the evening.

{¶23}  Mother has not been employed in 2014. Mother cannot financially provide for B.H.

{¶24}  The trial court concluded that Mother does not have stable economic resources to provide for the basic needs of B. H. and has not successfully complied with this aspect of the case plan.

### *Parenting skills.*

{¶25}  FCCPS wanted Mother to obtain parenting education. Mother started parenting education with Mike Selegue of Mid-Ohio Psychological Services, but only attended five out of ten sessions. Mother has not attended parenting education since May 19, 2014.

### *Violation of court orders.*

**{¶26}** Mother has violated the no contact order with Brad Heft on four (4) occasions. Mother acknowledged that she was aware of the no contact order on each of the four times she had contact with Brad Heft.

### *Visitation.*

**{¶27}** FCCPS wanted Mother to consistently visit with B. H. and Mother has maintained weekly visits with the child.

### *Guardian Ad Litem.*

**{¶28}** On July 15, 2014, Angela Selmer filed the report of Guardian Ad Litem, which supported FCCPS' motion for permanent custody of B. H.

**{¶29}** Following the presentation of all other evidence and testimony to the Court, the Guardian Ad Litem was cross-examined as to her report by FCCPS and attorney for alleged Father.

**{¶30}** The Guardian Ad Litem testified that she had attempted to contact the alleged father at the beginning of the case but had only recently been able to speak to him while he was incarcerated.

**{¶31}** The Guardian ad Litem further testified that the allegations of the Complaint were that the child was born addicted to opiates.

**{¶32}** The Guardian ad Litem testified that her opinion had not changed with regard to the granting of the Motion for Permanent Custody and that she still supported the Motion.

**{¶33}** At the conclusion of the hearing, alleged Father, through his attorney, requested that the Court modify the previous order requiring the parents to have no

contact with each other. The Court found this request to not be well taken and thereby denied the same.

{¶34} The Magistrate's Findings of Fact and Conclusions of Law were filed August 21, 2014. By an entry filed the same date, the court adopted the magistrate's decision granting FCCPS' request for a permanent custody of B.H. to the agency.

*Assignments of Error*

{¶35} On appeal, mother asserts the following assignments of error:

{¶36} "I. THE TRIAL COURT VIOLATED ASHLEY VAN ATTA'S CONSTITUTIONAL RIGHTS OF DUE PROCESS WHEN IT REFUSED TO SET HER MOTION FOR CUSTODY TO MATERNAL GRANDMOTHER FOR HEARING OR ALLOW TESTIMONY REGARDING THE SUITABILITY OF MATERNAL GRANDMOTHER AS A CUSTODIAN.

{¶37} "II. THE TRIAL COURT ERRED AND ABUSED IT'S DISCRETION IN FAILING TO SCHEDULE FOR HEARING MOTHER'S MOTION FOR CUSTODY TO MATERNAL GRANDMOTHER.

{¶38} "III. THE TRIAL COURT ERRED AND ABUSED IT'S DISCRETION IN FAILING TO PROPERLY ENGAGE IN A BEST INTEREST DETERMINATION AS REQUIRED BY R.C. 2151.414 (D) REGARDING WHETHER A LEGALLY SECURE PLACEMENT COULD BE ACHIEVED WITHOUT A GRANT OF PERMANENT CUSTODY TO THE AGENCY.

{¶39} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE

BEST INTEREST OF B.H. FOR PERMANENT CUSTODY TO BE GRANTED TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES.

{¶40} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT B.H. CANNOT BE PLACED WITH ASHLEY VAN ATTA WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH ASHLEY VAN ATTA.

{¶41} "VI. THE APPELLANT WAS PREJUDICIALLY DEPRIVED OF HER OHIO CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF APPOINTED COUNSEL.

{¶42} "VII. THE TRIAL COURT ERRED IN ITS STATEMENT IN ITS CONCLUSIONS OF LAW IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT OHIO REVISED CODE SECTION 215.14(E)(4)  APPLIED TO ASHLEY VAN ATTA."

### *Burden of Proof*

{¶43} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶44} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review*

{¶45} The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶46} In *Cross*, the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### *Requirements for Permanent Custody Awards*

{¶47} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶48} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶49} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

### *Failure to timely object and to file a transcript in the trial court*

{¶50} We first must address Mother's failure to timely file objections to the magistrate's decision of August 21, 2014 and Mother's failure to present a transcript to the trial court for its review of Mother's objections to the magistrate's decision. Mother filed the transcripts of the hearings in this court with her appeal. The trial court never had the opportunity to review the transcript when considering Mother's objections to the magistrate's decision.

{¶51} Under Juv. R. 40(E)(3)(a), a party must file written objections to a magistrate's decision within fourteen days. Furthermore, Juv. R. 40(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."

{¶52} Juv. R. 40 deals with matters referred to magistrates. Juv.R.40(D)(2) states in relevant part,

(2) *Magistrate's order; motion to set aside magistrate's order.*

 (a) *Magistrate's order.*

* * *

(b) *Motion to set aside magistrate's order.* Any party may file a motion with the court to set aside a magistrate's order. The motion shall state the moving party's reasons with particularity and shall be filed not later than ten days after the magistrate's order is filed. The pendency of a motion to set aside does not stay the effectiveness of the magistrate's order, though the magistrate or the court may by order stay the effectiveness of a magistrate's order.

(3) *Magistrate's decision; objections to magistrate's decision.*

* * *

(b) *Objections to magistrate's decision.*

   *(i) Time for filing.* A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Juv.R. 40(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law.

   *(ii) Specificity of objection.* An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.

   *(iii) Objection to magistrate's factual finding; transcript or affidavit.* An objection to a factual finding, whether or not specifically designated as

a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

*(iv) Waiver of right to assign adoption by court as error on appeal.* Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

{¶53} In the case at bar, the magistrates' decision was filed August 21, 2014. In *Harvey v. Hwand,* 103 Ohio St.3d 16, 2004-Ohio-4112, 812 N.E.2d 1275, the Ohio Supreme Court reiterated,

Our holding is also consistent with our decision in *Duganitz v. Ohio Adult Parole Auth.* (2001), 92 Ohio St.3d 556, 557, 751 N.E.2d 1058. We there held that Civ.R. 6(E) does not apply to extend the time to file objections to a magistrate's decision issued pursuant to Civ.R. 53(E). Civ.R. 53(E) provides a

party with the opportunity to file written objections to a magistrate's decision

"within fourteen days of the filing of the decision." Civ.R. 53(E)(3)(a).

Id. at ¶17. Thus, Mother had until September 1, 2014 to file a motion to set aside the

magistrate's decision. She did not. Mother had until September 5, 2014 to file her

objection to the magistrate's decision. Mother did not file an objection.

**{¶54}** In addition, Mother failed to provide a transcript of the magistrate's to the

trial court.

**{¶55}** This Court has held, "where an appellant fails to provide a transcript of the

original hearing before the magistrate for the trial court's review, the magistrate's

findings of fact are considered established and may not be attacked on appeal." *Doane*

*v. Doane*, 5th Dist. Guernsey No. 00CA21, 2001 WL 474267(May 2, 2001); *State v.*

*Leite*, 5th Dist. Tuscarawas No.1999AP090054, 2000 WL 502819(Apr. 11, 2000);

*Fogress v. McKee*, 5th Dist. Licking No. 99CA15,1999 WL 668580(Aug. 11, 1999); and

*Strunk v. Strunk*, 5th Dist.  Muskingum No. CT96-0015, 1996 WL 787981(Nov. 27,

1996). When a party objecting to a magistrate's decision has failed to provide the trial

court with the evidence and documents by which the trial court could make a finding

independent of the report, the appellate court is precluded from considering the

transcript of the hearing submitted with the appellate record. *State ex rel. Duncan v.*

*Chippewa Twp. Trustees,* 73 Ohio St.3d 728, 1995-Ohio-272.

**{¶56}** Accordingly, we review Mother's assignments of error only to analyze

whether the trial court abused its discretion in reaching specific legal conclusions based

upon the established facts. *He v. Zeng*, 5th Dist. Licking No. 2009-CA-00060, 2010-

Ohio-2095, ¶23.

{¶57} We note that authority exists in Ohio law for the proposition that appellant's failure to object to the magistrate's decision does not bar appellate review of "plain error." *See R.G. Real Estate Holding, Inc. v. Wagner*, 2nd Dist. Montgomery App. No. 16737, 1998 WL 199628(Apr. 24, 1998); *In re Ortego*, 5th Dist. Tuscarawas No. 1999AP05003, 2000 WL 330069(Mar. 8, 2000); *Batsch v. Tress,* 11th Dist. Portage No. 2000-P-0022, 2001-Ohio-4343. However, the Supreme Court has cautioned against the over application of plain error analysis,

> The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. *Schade*, 70 Ohio St.2d at 209, 24 O.O.3d at 317, 436 N.E.2d at 1003; *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 124, 512 N.E.2d 640, 643; *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800.

*Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 1997-Ohio-401, 679 N.E.2d 1099. The plain error doctrine has been used with regard to permanent custody proceedings. *In re Harris*, 5th Dist. Richland No. CA-2350, 1986 WL 4768(Apr. 14, 1986).

## Mother's Fifth Assignment of Error: Parental Placement within a Reasonable

## Time- R.C. 2151.414(B) (1) (a).

{¶58} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow*, 4th Dist. No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher*, 4th Dist. No. 1470, 1991 WL 62145(Apr 10, 1991).

{¶59} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this

section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.052907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.252907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12,2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the

parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent

to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶60} In the case at bar, the magistrate found,

The Court finds that as to mother, Ashley Van Atta:

Fairfield County Child Protective Services has made reasonable efforts to prevent the need for placement, to include but not be limited to the following: case management, visitation, referrals to mental health treatment and parent education, referrals to Metropolitan Housing, referral for screening; referral for alcohol/drug treatment at The Recovery Center, and transportation

However, said services have not and do not prevent the need for removal of the child from the home of mother or enable the child to return safely home because:

Limited progress in treatment and parenting classes; missed screens; violation of court orders including but not limited to no contact order; failure to secure appropriate/sober support system; failure to maintain utilities; missed treatment

The Court finds that for the child to remain with or be unified with mother would be contrary to the welfare of the child, and therefore, removal continues to be in the best interest of the child. Court finds Fairfield County Child Protective Services has made reasonable efforts to reunify the child.

{¶61} As previously noted, Mother's failure to file an objection to the magistrate's decision and a transcript in the trial court constituted a waiver of any alleged error. *In re Ortego, supra.*

**{¶62}** Assuming *arguendo* that Mother had filed a timely objection and a transcript to the magistrate's decision, we would find no error in the trial court's adoption of the magistrate's decision.

**{¶63}** Based on the evidence submitted at trial, the court properly determined the best interest of B.H. would be served by the grant of permanent custody to FCCPS rather than to be placed with the maternal grandparent. There was sufficient evidence submitted at the hearing to call into question, the relatives' ability to provide a long term, stable placement for the child.

**{¶64}** The trial court found that the evidence established that B.H. could not be placed with appellant-mother within a reasonable period and should not be placed with her.

**{¶65}** As set forth in our Statement of Facts, *supra* the trial court's findings are based upon competent credible evidence. The record includes testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶66}** The evidence demonstrated the successful efforts appellant-mother had made in the case to regain custody of her child. On that point, the evidence demonstrates that any improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to B.H.

**{¶67}** In the case of *In re: Summerfield*, Stark App. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of

the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶68} Further, substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. *In re Watkins v. Harris*, 9th Dist. Summit No. 17068, 1995 WL 513118(Aug. 30, 1995) at *9. The dispositive issue is not whether the parent has substantially complied with the case plan, but rather, whether the parent has substantially remedied the conditions that caused the child's removal. See, *e.g., In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995), 7-8; *In re Pittman*, 9th Dist. Summit App. No. 20894, 2002-Ohio-2208, ¶ 60; *In re R.E.P.*, 5th Dist. Tuscarawas No. 2011AP050021, 2011 - Ohio- 5375, ¶56.

{¶69} Based upon the foregoing, as well as the entire record in this case, the court properly found B.H. could not or should not be returned to the appellant-mother within a reasonable time. Despite offering numerous services, the appellant-mother was unable to mitigate the concerns that led to the child's removal.

## 1). Mother's first, second and third assignments of error: Relative Placement.

{¶70} Mother argues in her first, second and third assignments of error that the trial court erred by not conducting a hearing on her pretrial motion; that the magistrate erred in not deciding that permanent custody be granted to her mother; and the magistrate erred in not considering her mother for placement of the child.

{¶71} The grandmother who was allegedly available to provide care for B.H. did not file a motion for legal custody or placement of B.H. *In re Mastin*, 9th Dist. Lorain Nos. 97CA0006743, 97CA006746, 1997 WL 795809(Dec. 17, 1997).

{¶72} The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055(1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.*, 12th Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶17; *In re Turner*, 5th Dist. No. 2006CA00062, 2006-Ohio-4906 at ¶ 35; *In re Perry*, 4th Dist. Nos. 06 CA 648, 06 CA 649, 2006-Ohio-6128 at ¶62.

{¶73} During the permanent custody hearing, the court received testimony concerning relative placement. The trial court heard testimony concerning the maternal grandmother's living arrangements (T. at 398), financial information (T. at 404), physical condition (T. at 405; 408), relationship with Mother (T. at 409-412), lack of any contact ever with B.H. (T. at 417), and her demeanor (T. at 419-420).

{¶74} Specifically, the magistrate noted,

> Alice Peters, maternal grandmother, testified that she is now willing and able to take [B.H.] into her home and provide care for him as he is older now and she would not have to physically carry him all the time as she would have had to do when he was an infant. Ms. Peters fails to take into account that, although [B.H.] is walking at his age, he would still very much need to and/or want to be carried often as, developmentally, a child

of his age still needs to and wants to be held often. Ms. Peters further testified that her son helps her around the house by taking out the trash for her and mowing the grass for her, inferring that she is unable to complete these tasks without his help due to her health issues. Ms. Peters further testified she is on a variety of medications she is currently on for several health problems including suboxone and Xanax. Ms. Peters also testified that she cannot feel a lot of her feet. These health issues are concerning to the Court as to Ms. Peters ability to provide the proper care for [B.H.]. Ms. Peters has not been involved with any aspect of this matter since the birth of [B.H.] until a couple weeks prior to the hearing on the permanent custody motion, therefore, she does not have knowledge of the concerns in this matter. Further, Ms. Peters has never seen [B.H.] since his discharge from the hospital right after his birth or seen [B.H.] and Ashley Van Atta together. During her testimony, it was clear to the Court that Ms. Peters does not see any reason for Ashley Van Atta to not have custody of [B.H.] and/or complete, unsupervised access to [B.H.]. The Court therefore has concerns that Ms. Peters would not protect [B.H.] from either of his parents.

{¶75} This Court has noted,

The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson* (1999), 134 Ohio App.3d 119, 129-130, 730 N.E.2d 439, 446-447.(Citing *In re Mastin* (Dec. 17, 1997), Lorain App. Nos. 97CA006743 and

97CA006746 at 7). The child being placed in a permanent situation that fosters growth, stability, and security serves the child's best interests. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.,* 12th Dist. No. CA 2006-12-105, 2007-Ohio-3350 at ¶ 17; *In Re Dylan B., Luna B,* Stark App. No.2007-CA-00362, 2008-Ohio-2283 at ¶ 66; *In re Turner,* 5th Dist. No.2006CA00062, 2006-Ohio-4906 at ¶ 35; *In re Perry,* 4th Dist. Nos. 06 CA 648, 06 CA 649, 2006-Ohio-6128 at ¶ 62.

The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer,* 11 Ohio St.3d 498, 2006-Ohio-5513 at ¶ 56. *Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, did not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court

to weigh that factor more heavily than other factors." *Schaeffer* at 111

Ohio St.3d, 498, 857 N.E.2d 532, 2006-Ohio-5513, at ¶ 64; *In Re Dylan*

*B., Luna B,* supra at ¶ 67; *In re Avon,* 5th Dist. No. 2006-AP-09-0051,

2007-Ohio-1431 at ¶ 26.

*In re R.P. and I.S.,* 5th Dist. Tuscarawas No. 2011AP050024, 2011-Ohio-5378, ¶¶66-67.

### Mother's fourth assignment of error: The Best Interest of the Child.

{¶76} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶77} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a

separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶78}** The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶79}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

**{¶80}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in B.H.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to FCCPS.

**{¶81}** The record makes clear that Mother failed to complete the majority of the case plan provided by FCCPS and failed to meet even the basic needs of B.H. Mother failed to maintain stable housing. Mother failed to maintain stable employment. Mother failed to maintain her sobriety, made limited progress in her parenting skills, violated the trial court's no contact order on multiple occasions, and was not truthful with the magistrate.

**{¶82}** The record does not demonstrate that if she had been offered different case plan services, the result would have been different.

### Mother's sixth assignment of error: Ineffective Assistance of Counsel.

**{¶83}** In her sixth assignment of error, appellant-mother argues she was denied effective assistance of counsel. Specifically, appellant mother argues 1). The trial court lacked jurisdiction because the parents were living in Franklin County at the time of the birth; 2). Counsel failed to challenge evidence that the child was born with fentanyl in his system and its source; 3). Trial counsel should have requested a continuance of the permanent custody hearing to allow her motion for permanent custody to the maternal grandmother to have been heard.

**{¶84}** The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.

{¶85} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client.

{¶86} Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later

reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶87}** We apply the *Strickland* test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. *State v. Blacker*, 5th Dist. Guernsey No. 2005-CA-41, 2006-Ohio-5214.

*Jurisdiction.*

**{¶88}** In the case at bar, the magistrate found,

Mother and alleged father did not contest the finding of dependency or placement of [B.H.] in the temporary custody of FCCPS. Neither party objected to the jurisdiction of this Court at the time of the trial on the dependency complaint. Further, Mother testified that she went to Fairfield Medical Center when she went into labor for [B.H.] and then was transferred to Ohio State University Hospital where she gave birth to

[B.H.], Mother further testified that she gave a Fairfield County address as

her address to Ohio State University Hospital.

**{¶89}** There is no evidence that had jurisdiction been challenged the trial court

would have found it lacked jurisdiction. Appellant-mother has demonstrated no prejudice

resulting from any error.

*Failure to object.*

**{¶90}** Second, appellant mother challenges the introduction of evidence that

B.H. was born with drugs in his system.

**{¶91}** "'The failure to object to error, alone, is not enough to sustain a claim of

ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d

136(1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E. 2d 831(1988).

*Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A

defendant must also show that he was materially prejudiced by the failure to object.

*Halloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶92}** Appellant-mother has failed to demonstrate that there exists a reasonable

probability that, had trial counsel objected to this evidence, the result of his case would

have been different. The result of the trial was not unreliable nor was the proceedings

fundamentally unfair because of the performance of defense counsel.

*Failure to request a continuance.*

**{¶93}** Ordinarily a reviewing court analyzes a denial of a continuance in terms of

whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84

S.Ct. 841, 11 L.Ed.2d 921(1964).

{¶94} In the case at bar, the magistrate found the appellant-mother failed to file and to serve the motion for relative placement/custody in accordance with the Rules of Juvenile Procedure. Additionally, the magistrate did not refuse to hear the motion; rather the court deferred hearing the motion until a determination of the permanent custody motion.

{¶95} In the case at bar, no reason was given for waiting until the day of the permanent custody hearing for requesting relative placement or custody. Appellant-mother has failed to demonstrate that there exists a reasonable probability that, had trial counsel requested a continuance the trial court would have granted the motion. The result of the trial was not unreliable nor was the proceedings fundamentally unfair because of the performance of defense counsel.

{¶96} Because we have found no instances of prejudice in this case, we find appellant-mother has not demonstrated that she was prejudiced by trial counsel's performance.

### Mother's seventh assignment of error: Incorrect application of R.C. 2151.414(E)(4) and R.C. 2151.414(E)(10) to Mother.

{¶97} FCCPS concedes that a reading of the trial court's findings of fact would indicate that R.C. 2151.414 (E) (4) and (10) were incorrectly applied to Mother.

{¶98} To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). Civ.R. 61 sets forth the harmless error rule in civil cases, providing that no error or defect in any ruling is "ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a

judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *See, State of Ohio, ex rel. Attorney General v. Vela,* 5th Dist. Licking No. 12–CA–62, 2013–Ohio–1049, ¶41.

{¶99}  In the case at bar, the trial court also found that R.C. 2151.414 (E) (1), (2), and (16) did correctly apply to Mother. We find Mother was not prejudiced. Therefore, the error should be considered harmless error beyond a reasonable doubt.

## *Conclusion*

{¶100} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore B.H. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to FCCPS was in B.H.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶101} Because the evidence in the record supports the trial court's judgment, we overrule Mother's seven assignments of error, and affirm the decision of the Fairfield County Court of Common Pleas, Juvenile Court Division.


By Gwin, J.,

Hoffman, P.J.,

Farmer, J., concur